**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DENNY L. HOWELL II,** *Petitioner*, **v.** | : | **CIVIL ACTION** |
| **CHRISTOPHER DOWNEY,** *Respondent*. | : | **NO. 26-528** |

# MEMORANDUM

**PEREZ, J.** **September 11, 2026**

This case arises from a dispute between Petitioner Denny L. Howell II ("Howell") and Respondent Christopher Downey ("Downey"), the two members of DH Yacht Sales, LLC ("DH Yacht"), which culminated in a December 2025 arbitration award (the "Award"). Howell asks the Court to vacate the Award, while Downey opposes vacatur and has filed a Cross-Motion to Confirm the Award. Howell also moves to add DH Yacht, his son Denny L. Howell III ("Howell III"), and Navis Yacht Group, LLC ("Navis") as Respondents and to remand the case to state court, arguing that their joinder would destroy diversity jurisdiction.

The Court must analyze the joinder request first. Diversity jurisdiction existed when Downey removed the case, and Howell has not shown that any of the proposed parties must be joined in a manner that defeats that jurisdiction. The Court will therefore deny remand. On the merits, Howell has not established a ground to vacate the Award under the Federal Arbitration Act ("FAA"), so the Court will deny his Petition to Vacate. The Court will not, however, immediately grant Downey's Cross-Motion. The Award's remedial provisions are internally inconsistent as to the identity of the judgment creditor, the persons liable for portions of the monetary award, and

the scope of injunctive relief. The Court will hold ECF No. 8 in abeyance and return the Award to the arbitration panel for the limited purpose of clarifying the remedy.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2021, Howell and Downey formed DH Yacht, a Florida limited liability company. ECF No. 7 at 2. The parties describe themselves as equal members of the company. Howell is a Pennsylvania citizen; Downey is a Florida citizen. *Id.* at 2–3; ECF No. 10-3 at 1. The Operating Agreement contains a broad arbitration provision requiring disputes arising from the Agreement to be submitted to final and binding AAA arbitration in either Jupiter, Florida, or Chester County, Pennsylvania. ECF No. 1 at 69. The provision further states that an award is final, binding, and conclusive and may be entered as a final judgment in a court of competent jurisdiction. The Agreement separately contains a Florida choice of law clause. *Id.* at 69–71.

The underlying dispute arose from Howell and Downey's equal ownership of DH Yacht. Howell accused Downey of misusing company funds and improperly controlling the business, while Downey accused Howell of forming a competing yacht business, diverting company funds, interfering with DH Yacht's operations and customers, and violating the Operating Agreement. Those competing claims led Howell to initiate the AAA arbitration in October 2023. ECF No. 1 at 87–89; ECF No. 7 at 3–5.

The arbitration eventually included, among others, DH Yacht as a claimant and Howell, Howell III, and Navis as counter-respondents to Downey's affirmative claims. ECF No. 1 at 157; ECF No. 10-3 at 1. The panel's Preliminary Hearing and Scheduling Order No. 1 designated the FAA as governing the arbitration. ECF No. 1 at 3; ECF No. 7 at 14–15.

Before the originally scheduled merits hearing, the parties negotiated a Settlement Term Sheet. ECF No. 1 at 75. The Term Sheet contemplated that Downey would pay Howell $175,000

in satisfaction of claims among Downey, Howell, and DH Yacht and in redemption of Howell's membership interest. *Id.* at 75. It separately contemplated a $10,000 payment from the "Navis Parties" to Downey. *Id.* at 76. The Term Sheet also provided that the parties would execute a comprehensive settlement agreement containing additional customary provisions. *Id.* Importantly, paragraph 12 stated that the parties would request that the existing AAA panel "retain jurisdiction to fully and finally resolve any dispute regarding the final terms of the Settlement Agreement," with the panel permitted to resolve those disputes "summarily" (i.e. without a full hearing.) *Id*. at 77.

Howell argues the Term Sheet itself was a complete and binding settlement that extinguished the claims being arbitrated. ECF No. 1 at 10, 17–18. Downey responds that material terms remained unresolved and points, among other things, to later correspondence in which Howell's counsel described the formal settlement agreement as a "DRAFT" subject to further revisions. ECF No. 7 at 5–6.

The parties never completed the settlement. Howell then asked the Chester County Court of Common Pleas to enforce it, but the court sent the dispute back to the AAA panel. ECF No. 1 at 10; ECF No. 7 at 6–7. Howell says the panel would not consider his Petition to Enforce unless he first paid more than $22,000 in arbitration fees and later dismissed the Petition when he did not pay. He argues that the billing was unclear and that the dismissal denied him a fair chance to have the settlement issue heard. ECF No. 1 at 18–20, 100, 107.

Downey argues that AAA Rule R-59 allowed the panel to limit Howell's ability to pursue his own claims or file motions if he did not pay the required fees, but it could not prevent him from defending against Downey's claims. Downey also points to Orders Nos. 6 through 8, in

which the panel repeatedly warned Howell about the consequences of nonpayment. ECF No. 7 at 8–9, 17–18.

The panel thereafter terminated Howell's affirmative arbitral claims but permitted Downey's claims to proceed. The panel also held that Howell was not precluded from pursuing his claims in another tribunal, and Howell subsequently filed suit in Florida state court. ECF No. 1 at 13–14; ECF No. 7 at 11.

After this extended interruption in the arbitration, Howell requested additional discovery concerning the business's operations and Downey's claimed losses. ECF No. 1 at 14, 152–53. The panel denied the request. *Id*. at 15, 155. Downey nevertheless introduced evidence of losses and commissions arising after the original discovery cutoff, which Howell claims he had no meaningful opportunity to investigate. *Id*. at 15, 21–22.

The arbitration hearing occurred over four days in April and June 2025. Howell participated and defended against Downey's claims. The parties then submitted supplemental briefing at the conclusion of the hearing. ECF No. 1 at 15; ECF No. 7 at 2, 13. On December 11, 2025, the panel of three arbitrators issued a unanimous Decision and Award. ECF No. 1 at 157–60. The primary findings of the panel were that: (1) Howell knowingly operated a competing enterprise; (2) Howell and Howell III improperly accessed company communications and interfered with customer relationships; (3) Howell disseminated disparaging information concerning DH Yacht; and (4) Howell transferred company funds to another business.

The Award's remedial provisions contain several inconsistencies that neither party meaningfully addresses in their briefing and that prevent the Court from determining from the face of the Award exactly what judgment it is supposed to enter. *See* ECF No. 1 at 157–60. In the damages discussion, the panel awarded: (1) $97,000 to Downey against Howell and Howell III for

lost commissions; (2) $100,000 to DH Yacht for harm to the company; and (3) $67,000 to Downey for attorneys' fees and costs.

The panel then stated that the "total monetary award in favor of Downey is $164,000.00 and in favor of DH Yacht Sales is $100,000.00," plus AAA fees. However, in the final "AWARD" section, it stated that "Downey shall recover from Howell and Denny L. Howell, III the total sum of $264,000.00." The injunctive relief section names Howell, Howell III, and Navis as enjoined parties, whereas the final summary provision refers only to Howell and Navis. The Award separately splits Howell from DH Yacht and allocates AAA administrative fees, arbitrator compensation, and reimbursement obligations to Howell and Howell III.

Howell filed his Petition to Vacate in Chester County on January 12, 2026, invoking Pennsylvania arbitration law and challenging the Award based on the alleged settlement, fee and discovery rulings, termination of his claims, and procedural unfairness. Downey removed to EDPA on diversity of citizenship grounds on January 27 and, on February 13, filed ECF No. 8, a Cross-Motion to Confirm under the FAA. On February 27, Howell filed ECF No. 10, seeking to add DH Yacht, Howell III, and Navis as Respondents and remand under § 1447(e), arguing that Downey's confirmation request made them indispensable. Although Howell states that he moved fourteen days after removal, the motion was actually filed 31 days after removal and 14 days after Downey's Cross-Motion.

## II. DISCUSSION

### A. Howell's Motion to Add Parties and Remand (ECF No. 10)

#### 1. The Court Had Diversity Jurisdiction When the Case Was Removed

The Court had diversity jurisdiction when Downey removed this action. Diversity jurisdiction requires an amount in controversy exceeding $75,000 and complete diversity between

the properly aligned parties. 28 U.S.C. § 1332(a). Since the FAA itself does not confer subject matter jurisdiction, an independent jurisdictional basis is required to adjudicate a petition brought under it. *Badgerow v. Walters*, 596 U.S. 1, 8–9 (2022).

At the time of removal, Howell and Downey were the only named parties. Howell is a citizen of Pennsylvania, Downey is a citizen of Florida, and the Award places more than $75,000 in controversy. Indeed, the Notice of Removal relied on the Award's stated $264,000 monetary recovery, in addition to arbitration fees. Howell does not dispute that the Court had diversity jurisdiction when the case was removed. The jurisdictional issue instead arises from what happened once the case came to federal court: Howell moved to add DH Yacht, Howell III, and Navis as respondents, arguing that their joinder would destroy diversity and require remand. The question is therefore whether those parties must—or should—be added after federal jurisdiction has already attached.

**2. Howell's Post-Removal Joinder Request Is Governed by Rule 19 and § 1447(e)**

Howell seeks to add three parties after removal and on that basis, return this case to state court. His request requires the Court to answer two related but distinct questions. The Court first considers whether any proposed party is required under Federal Rule of Civil Procedure 19. If Rule 19 does not require the party's presence, the Court then considers whether post-removal joinder should nevertheless be permitted under 28 U.S.C. § 1447(e) when doing so would destroy diversity. *See Avenatti v. Fox News Network LLC*, 41 F.4th 125, 129, 133–34 (3d Cir. 2022); *Massaro v. Bard Access Sys., Inc.*, 209 F.R.D. 363, 365 (E.D. Pa. 2002); *Edgars Delivery, LLC v. FedEx Ground Package Sys., Inc.*, No. 24-6398, 2025 WL 1139544, at *4 (E.D. Pa. Apr. 17, 2025).

Rule 19 asks whether a case can proceed fairly in the absence of a particular party. A party must be joined if the Court cannot grant complete relief to the parties already before it without that party, if proceeding without the party may impair an interest the party claims in the dispute, or if the party's absence may expose an existing party to multiple or inconsistent obligations. Fed. R. Civ. P. 19(a)(1). The mere fact that an absent party has an interest in the dispute, however, does not make joinder a requirement. Furthermore, when considering "complete relief," the Court focuses on whether it can resolve the dispute among the parties already before it—not whether it can resolve every related right or claim involving an absent party. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405–12 (3d Cir. 1993).

If Rule 19 does not require joinder, § 1447(e) governs a request to add a defendant whose presence would destroy diversity. It gives the Court two choices: "deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). Thus, a plaintiff cannot defeat jurisdiction simply by seeking to add a nondiverse defendant after removal.

In deciding whether to permit such joinder, the Court considers the four *Hensgens* factors: "(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in asking for amendment; (3) whether the plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on the equities." *Avenatti*, 41 F.4th at 129 (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)). Further, since federal jurisdiction has already attached, the Court must "carefully scrutinize" a proposed amendment that would divest it of that jurisdiction. *Id.* at 133.

The three proposed parties require separate consideration. DH Yacht has a direct interest in the Award because the panel awarded it $100,000 and removed Howell as a member. Howell III faces monetary and injunctive relief under the Award. Navis is also subject to injunctive relief,

but Howell has not established its citizenship. The Court therefore considers whether each party is required, whether its joinder would affect diversity, and, where applicable, whether the *Hensgens* factors favor post-removal joinder.

**3. DH Yacht Is Not a Required Party, and the *Hensgens* Factors Weigh Against Joinder**

DH Yacht plainly has an interest in the Award. That does not mean, however, that the Court cannot resolve the dispute between Howell and Downey without it.

A closely held entity does not always have to be joined simply because the case affects its interests. *HB General Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185 (3d Cir. 1996). Instead, whether joinder is required depends in part on whether those interests are adequately represented by parties already before the court. *Id.* Courts applying *HB General* have similarly concluded that an LLC's absence does not necessarily require joinder when its members are already parties and adequately represent its interests. See *Baccari v. Baccari*, No. 22-2337, 2022 WL 18585881, at *1 (E.D. Pa. Aug. 30, 2022) (McHugh, J.); *Bountiful Capital, LLC v. Kaminski*, No. 3:25-cv-888, 2026 WL 92101, at *5–6 (M.D. Pa. Jan. 13, 2026).

There is no question that the Award affects DH Yacht. The panel awarded DH Yacht $100,000 and removed Howell as a member. ECF No. 1 at 158–59. However, Howell and Downey are DH Yacht's two members, and both are already parties to this action. ECF No. 7 at 2–3; ECF No. 10-3 at 1. Their opposing positions also place the relevant interests before the Court: Howell seeks to set aside the Award, while Downey seeks to preserve it, including the relief awarded to DH Yacht. DH Yacht's interest in the validity of the Award therefore is not unrepresented merely because the company itself is absent.

Nor does DH Yacht's absence prevent the Court from granting complete relief between Howell and Downey. Howell asks the Court to vacate the Award; Downey asks the Court to confirm it. The Court can determine whether Howell has established a ground for vacatur without DH Yacht as a party. And if the Award survives, the Court need not enter judgment in favor of DH Yacht to resolve the relief properly sought between Howell and Downey. *Janney*, 11 F.3d at 405–12. The fact that the Court cannot enter a $100,000 judgment in favor of an absent DH Yacht does not mean it cannot resolve the dispute between the parties actually before it.

Howell relies on *Securities America, Inc. v. Smith*, No. 1:24-cv-126, 2024 WL 4025873 (N.D.N.Y. Sept. 3, 2024), but it does not compel a different result. There, the absent arbitration parties themselves sought joinder. They had appeared and been served with the confirmation motion and were personally responsible for approximately ninety percent of the damages the respondent was seeking to confirm. The court could not grant the relief requested without adjudicating the liability of those absent parties. Here, DH Yacht stands on the opposite side of the Award: it is an award creditor, not an absent debtor responsible for most of the liability Downey seeks to enforce. Unlike the absent parties in *Securities America*, DH Yacht's constituent interests are represented by its two members, both of whom are already before the Court. The Court can therefore proceed without adjudicating DH Yacht's entitlement to a judgment in its absence. DH Yacht is not a required party under Rule 19(a).

The *Hensgens* factors independently weigh against allowing Howell to add DH Yacht after removal. First, the timing and circumstances of the proposed amendment indicate that defeating federal jurisdiction is at least one purpose of the request. Howell knew before filing this action that the Award granted DH Yacht $100,000 and affected Howell's membership in the company. ECF No. 1 at 157–60. Yet he filed his Petition to Vacate naming only Downey. He did not seek to add

DH Yacht while the case remained in state court. Only after Downey removed the case and moved to confirm the Award did Howell seek to add DH Yacht while simultaneously requesting remand. Downey's Cross-Motion to Confirm did not create DH Yacht's interest in the Award; that interest was apparent from the Award itself.

The second factor weighs somewhat in Howell's favor. He did not wait long after removal to seek amendment. Although he filed the motion thirty-one days after removal, he did so only fourteen days after Downey filed his Cross-Motion to Confirm. The Court therefore does not find Howell substantially dilatory.

The third factor, however, weighs against joinder because Howell will not be significantly prejudiced by DH Yacht's absence. Howell can obtain the principal relief he seeks—vacatur—without DH Yacht as a party. And if the Award survives, the Court can limit any judgment to relief properly entered between the parties before it rather than adjudicating DH Yacht's separate entitlement to $100,000. Thus, denying joinder neither prevents Howell from pursuing his challenge to the Award nor requires the Court to enter relief in DH Yacht's favor without DH Yacht before it.

Finally, the remaining equities do not favor upsetting jurisdiction that had already vested at removal. Both members of DH Yacht are before the Court, the company's interest in the validity of the Award is represented, and the Court can resolve Howell's vacatur challenge without adjudicating DH Yacht's entitlement to a separate judgment. On balance, the *Hensgens* factors weigh against post-removal joinder. The Court will therefore deny Howell's request to add DH Yacht.

**4. Navis Will Not Be Joined as a Respondent**

Howell's request to add Navis fails for two independent reasons. First, as a threshold matter, Howell has not established that Navis's joinder would destroy diversity. Second, even assuming Navis could properly be joined, its interests on the principal issue align with Howell rather than Downey.

An LLC is a citizen of every state in which one of its members is a citizen. Its state of organization and principal place of business do not determine its citizenship. *Zambelli Fireworks Manufacturing Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). Howell identifies Navis only as a Florida LLC. He does not identify its members or allege their citizenship. ECF No. 10-3 at 1. He therefore has not established the premise of his § 1447(e) argument—that adding Navis would destroy diversity and require remand.

There is a also a second problem. Howell seeks to add Navis as a Respondent, but the Court must align parties according to their actual interests rather than the labels assigned in the pleadings. *Employers Insurance of Wausau v. Crown Cork & Seal Co.*, 942 F.2d 862, 864–66 (3d Cir. 1991). The principal dispute here is whether the Award should stand: Howell seeks vacatur, while Downey seeks confirmation. Because the Award imposes injunctive relief against Navis, ECF No. 1 at 159, Navis has an apparent interest in setting aside that relief. On the issue that defines this case, then, Navis's interests align with Howell's, not Downey's. Labeling Navis a "Respondent" does not change that alignment.

Navis's dissolution does not alter the result. Navis filed articles of dissolution in May 2025, but Florida law permits a dissolved LLC to continue winding up its affairs and to prosecute or defend civil proceedings during that process. Fla. Stat. § 605.0709(1)–(2). Dissolution therefore does not mean Navis ceased to exist for purposes of this litigation.

Navis's continuing legal existence does also does not make it a required party. The Award imposes no monetary liability on Navis. ECF No. 1 at 157–60. The Court can determine whether Howell has established a basis to vacate the Award without adjudicating or enforcing the injunction against Navis. And if Navis wishes to challenge relief directed specifically at it, it may seek to participate in the action itself. Navis's absence therefore does not prevent the Court from resolving the dispute presently before it.

The circumstances surrounding Howell's request also provide no reason to permit joinder. As with DH Yacht, Howell knew when he filed his Petition that the Award imposed relief against Navis, yet he named only Downey and sought to add Navis only after removal while requesting remand. ECF No. 1 at 9–22, 159; ECF No. 10. More importantly, Howell has not established that Navis is nondiverse in the first place, and its interests on vacatur appear to align with his own. The Court will therefore deny Howell's request to add Navis as a Respondent.

**5. Howell III Is Aligned with Howell, Not Downey**

Howell III presents a different situation. Unlike Navis, his citizenship is known, and the Award directly imposes monetary liability, arbitration fees, and injunctive relief against him. ECF No. 1 at 158–60. He therefore has a substantial interest in what happens to the Award. However, this Court finds that interest does not place him on Downey's side of this case.

Under *Wausau*, the Court aligns parties according to their actual interests in the principal dispute. 942 F.2d at 864–66. Howell seeks to vacate the Award; Downey seeks to confirm it. Because vacatur would relieve Howell III of obligations imposed by the Award, Howell III's interest aligns with Howell's. He therefore cannot be treated as a Respondent merely because Howell's proposed amended caption places him there. That alignment resolves any jurisdictional concern underlying Howell's request. Howell and Howell III are Pennsylvania citizens, while

Downey is a Florida citizen. Properly aligned with Howell as a Petitioner, Howell III would not destroy complete diversity. Downey does not oppose Howell III's participation in that posture. ECF No. 14 at 10–12. Thus, Howell III's interest in the Award does not support joining him as a nondiverse Respondent and remanding the case under § 1447(e).

At the same time, since the Award imposes obligations directly on Howell III, he should have notice of these proceedings and an opportunity to protect his interests before the Court enters any judgment against him. The Court will therefore deny Howell's request to add Howell III as a Respondent, but Howell shall provide him with notice of this action and an opportunity to seek participation in a posture consistent with his actual interest in the Award.

**B. Howell Has Not Established a Basis to Vacate the Arbitration Award**

**1. The FAA Supplies the Governing Vacatur Standard**

Under the FAA,[1] judicial review of an arbitration award is "extremely deferential." *Hamilton Park Health Care Center Ltd. v. 1199 SEIU United Healthcare Workers East*, 817 F.3d 857, 861–62 (3d Cir. 2016). Section 10 permits vacatur only on narrow grounds, including corruption or undue means, evident partiality, prejudicial misconduct, or an arbitrator's exceeding or improperly exercising the powers granted by the parties. 9 U.S.C. § 10(a). Sections 10 and 11 provide the exclusive statutory grounds for vacating, modifying, or correcting an award. Ordinary legal or factual error is not enough. *Whitehead v. Pullman Group*, LLC, 811 F.3d 116, 120–21 (3d Cir. 2016).

[1] The Court evaluates Howell's challenges under the Federal Arbitration Act, not Pennsylvania common law arbitration principles. The FAA governs written arbitration agreements involving interstate commerce, and the record reflects both that this dispute involved interstate activity and that the arbitration panel's first scheduling order identified the FAA as governing. Although Howell's original Petition relied on Pennsylvania common law arbitration principles, his opposition to Downey's Cross-Motion to Confirm now expressly invokes §§ 10(a)(3) and 10(a)(4) of the FAA. See ECF No. 11 at 2.

Howell also refers to "manifest disregard of the law" as a possible basis for vacatur. The Third Circuit has not decided whether "manifest disregard of the law" remains a basis for vacatur after *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008), which held that the FAA's statutory grounds for vacatur and modification are exclusive. *Whitehead*, 811 F.3d at 121 n.4.

**2. The Settlement Dispute Does Not Establish that the Panel Exceeded Its Powers**

Howell argues that the April 2024 Term Sheet settled the parties' dispute and therefore left the arbitrators with no authority to continue deciding the underlying claims. That argument does not establish vacatur under § 10(a)(4).

Section 10(a)(4) asks whether the arbitrators acted outside the authority the parties gave them, not whether they reached the correct legal conclusion. A court therefore does not vacate an award simply because it believes the arbitrators misunderstood a contract or made a legal error while deciding an issue that was properly before them. See Whitehead, 811 F.3d at 120–21.

The Term Sheet itself makes it difficult to say that the panel had lacked authority to address the settlement dispute. Although it contains significant settlement terms—including amounts to be paid—it also contemplates that the parties would later execute a "comprehensive Settlement Agreement" containing additional terms and mutual releases. ECF No. 1 at 75–76. More importantly, paragraph 12 specifically provides that the parties would ask the existing AAA panel to retain jurisdiction to "fully and finally resolve any dispute regarding the final terms of the Settlement Agreement." ECF No. 1 at 77. In other words, the parties themselves anticipated that disagreements over the settlement could return to the same arbitration panel.

Howell may believe that the Term Sheet was already a complete and binding agreement that resolved every claim. Downey disputes that, pointing to the contemplated comprehensive agreement and later negotiations over its terms. The Court does not need to decide which side

has the better contract interpretation to resolve the § 10(a)(4) issue. The important point is that the parties expressly gave the panel a continuing role in resolving disputes over the settlement. The panel therefore was not acting on a subject wholly outside its delegated authority merely by continuing to address the parties' dispute after the Term Sheet was drafted. The panel's handling of Howell's Petition to Enforce, including its decision to condition further consideration on payment of arbitration fees, raises a separate question about procedural fairness, addressed below under § 10(a)(3). It does not establish that the panel lacked authority over the settlement issue in the first place.

**3. The Fee Rulings Do Not Establish Fundamental Unfairness or an Excess of Arbitral Authority**

Howell also challenges the panel's decision to restrict his affirmative claims and motion practice after he failed to pay the required AAA fees. Those rulings do not support vacatur under either § 10(a)(3) or § 10(a)(4).

Under § 10(a)(3), the question is not whether the arbitration procedure was ideal or whether the Court would have handled the fee dispute differently. Vacatur is warranted only when the arbitrators' procedural rulings were so prejudicial that they denied a party a fundamentally fair hearing. *Whitehead*, 811 F.3d at 120. Arbitrators otherwise have substantial discretion to manage the proceeding and enforce the rules governing the arbitration.

Howell argues that the AAA demanded substantial fees, failed to clearly explain the amounts due, and then refused to hear his settlement enforcement motion because he did not make the required payment. That is a legitimate complaint, particularly because Howell viewed the settlement issue as potentially dispositive. The record, however, shows that the panel acted under an AAA rule that specifically addressed nonpayment. Rule R-59 permitted the panel to limit a

nonpaying party's ability to pursue affirmative claims or file motions, while expressly providing that the party could not be prevented from defending against claims or counterclaims. The rule also required notice and an opportunity to respond before such restrictions were imposed.

The record further reflects that Orders Nos. 6 through 8 repeatedly warned Howell that continued nonpayment could result in restrictions on his participation. Most importantly, the panel did not bar Howell from defending against Downey's claims. Howell participated in the later merits hearing and presented a defense; his complaint concerns the loss of his own affirmative claims and motions. Those circumstances do not show that the panel acted outside the authority granted by the AAA rules or deprived Howell of a fundamentally fair opportunity to defend himself. The fee rulings therefore do not provide a basis for vacatur under § 10(a)(3) or § 10(a)(4).

**4. The Discovery and Evidentiary Rulings Do Not Warrant Vacatur Under § 10(a)(3)**

Howell also argues that the panel unfairly denied him additional discovery while allowing Downey to present evidence of losses that arose after discovery had closed. Howell's concern is understandable. Nearly a year had passed since the original discovery period, Downey had continued operating DH Yacht during that time, and Howell therefore needed updated discovery to test Downey's claimed lost commissions and business losses. The panel denied his request and proceeded with the hearing. *See* ECF No. 1 at 14–15, 152–55.

Section 10(a)(3), however, sets a considerably higher bar than showing that additional discovery would have been useful or that the Court might have handled the issue differently. Vacatur is warranted only when the arbitrators' procedural or evidentiary rulings were so prejudicial that they deprived the party of a fundamentally fair hearing. *Whitehead*, 811 F.3d at 120–21. In *Whitehead*, the arbitrators declined to credit testimony concerning communications with two deceased songwriters even though those communications were important to proving the

claimant's contractual rights. The Third Circuit recognized that the ruling made the claimant's case substantially more difficult, but still found no fundamental unfairness. *Id.* The relevant question is therefore whether Howell lost a meaningful opportunity to present his defense, not whether a different discovery ruling might have strengthened it.

The record here does not establish the level of prejudice required for vacatur. Howell actively participated in a four-day merits hearing, was permitted to defend against Downey's claims, objected to the evidence he believed fell outside the original discovery period, and submitted supplemental briefing at the conclusion. *See* ECF No. 1 at 15; ECF No. 7 at 2, 13. Additionally, Howell does not identify a particular witness, document, or other piece of material evidence that he possessed and the panel refused to hear. His argument is instead that reopening discovery might have enabled him to uncover additional evidence with which to challenge Downey's damages case.

That distinction is important under § 10(a)(3). The statute addresses a refusal to hear pertinent and material evidence. It does not, however, guarantee the same breadth of discovery available in federal litigation. A limitation on discovery may make a party's defense harder without making the proceeding fundamentally unfair. Here, Howell was able to hear Downey's evidence, challenge it, present his own defense, and argue the issue after the hearing. Without identifying material evidence he was actually prevented from presenting or otherwise showing that the discovery ruling left him unable to meaningfully contest Downey's claims, Howell has not shown the kind of prejudice required by § 10(a)(3).

The panel's discovery and evidentiary rulings therefore do not warrant vacatur.

**C. The Award Must Be Clarified Before the Court Rules on ECF No. 8**

If the Award were clear, the path forward would be straightforward. Section 9 of the FAA provides that, when the parties have agreed that judgment may be entered on an arbitration award, the court "must grant" confirmation unless the award has been vacated, modified, or corrected under §§ 10 or 11. 9 U.S.C. § 9. The Third Circuit likewise describes confirmation as the mechanism that converts an arbitration award into an enforceable federal judgment. Teamsters Local 177 v. United Parcel Serv., 966 F.3d 245, 252–53 (3d Cir. 2020). Here, § 12.7 of the Operating Agreement provides that the Award is "final, binding and conclusive" and may be entered as a final judgment in any court of competent jurisdiction. (ECF No. 1 at 71.) Downey also sought confirmation within the one year period required by § 9. See ECF No. 8-1 at 2–3. Thus, once Howell's vacatur challenge is rejected, confirmation would ordinarily follow.

The problem is that the Award contains several inconsistencies in its remedial provisions that cannot be resolved simply by adopting Downey's proposed interpretation.

The most significant issue concerns the $264,000 monetary award. In its damages analysis, the panel awarded $97,000 to Downey for lost commissions, $67,000 to Downey for attorneys' fees and costs, and a separate $100,000 to DH Yacht. The panel then expressly stated that the "total monetary award in favor of Downey is $164,000.00 and in favor of DH Yacht Sales is $100,000.00." Yet the final operative paragraph states that "Downey shall recover from Howell and Denny L. Howell, III the total sum of $264,000.00." ECF No. 1 at 158–59. Those provisions leave two basic questions unanswered: whether the $100,000 belongs to Downey or DH Yacht, and whether Howell III is liable for that $100,000 component. Those questions matter to the identity of the judgment creditor and judgment debtors and cannot be treated as clerical details.

The injunctive relief also has a similar problem. One part of the Award permanently enjoins Howell, Howell III, and Navis, while the final summary names only Howell and Navis. ECF No. 1 at 159. Before turning the injunction into an enforceable federal order, the Court must know whether Howell III is actually subject to it. The Award also separately requires Howell and Howell III to pay arbitration fees and reimburse Downey, so the panel must clarify whether those amounts are in addition to the monetary award. (ECF No. 1 at 160.)

Neither side meaningfully addresses these discrepancies. Downey asks the Court to confirm the Award and convert it into an enforceable judgment, ECF No. 8-1 at 2–4, while Howell focuses primarily on vacatur, joinder, and the effect of confirmation on absent parties. The Court therefore would have to choose among competing readings of the Award on its own.

In Colonial Penn Insurance Co. v. Omaha Indemnity Co., 943 F.2d 327, 333–37 (3d Cir. 1991), arbitrators ordered Omaha to pay $10 million and also to release any claims it had to certain reserves held by Colonial Penn. The issue was that Omaha apparently had no such claims to release, leaving the court unclear on what that part of the award was supposed to accomplish. The arbitrators later attempted to "clarify" the award by replacing the release requirement with an additional payment of nearly $9 million. The Third Circuit held that when "the remedy awarded by the arbitrators is ambiguous, a remand for clarification" is appropriate. Colonial Penn, 943 F.2d at 334. The Court cautioned that the district court itself "should not clarify an ambiguous arbitration award," because doing so risks substituting the court's interpretation for the arbitrators' intent. Id.

The point of that limited remand is not to reopen the case or allow the arbitrators to reconsider the merits. It is to let the arbitrators explain what they already meant, rather than forcing the court to guess at the intended remedy. The Court will not decide on its own whether the

disputed $100,000 belongs to Downey or DH Yacht, whether Howell III owes that amount, or whether Howell III is subject to the injunction. Those are questions the panel should clarify before the Court converts the Award into a federal judgment.

The Court will therefore hold ECF No. 8 in abeyance and return the Award to the arbitration panel for the limited purpose of clarifying its remedy.

Once the panel clarifies the Award, Downey can identify the exact federal judgment he is seeking. If he seeks only relief from Howell II to Downey, the Court can determine whether that relief may be confirmed between the existing parties. If he seeks judgment against Howell III, Howell III should first be given an opportunity to participate in the case in the proper alignment. If Downey seeks entry of monetary relief in DH Yacht's favor, the Court can then decide whether DH Yacht must formally participate before judgment is entered on its behalf. The same would apply if Downey seeks federal injunctive relief against Navis.

## III. CONCLUSION

For these reasons, the Court will deny Howell's Motion to Add Parties and Remand and deny his Petition to Vacate the Arbitration Award. The Court will hold Downey's Cross-Motion to Confirm in abeyance and remand the Award to the arbitration panel for the limited purpose of clarifying the relief originally intended. The panel may clarify, but may not reconsider or alter, its substantive adjudication. Following clarification, the parties may address the proper scope and form of any judgment confirming the Award. An appropriate Order follows.